Oral Argument, Absolute Secrecy Notice, Provided. Mr. Tiber for the appellate. Morning, Your Honors. Martin Tiber representing Petitioner Shannon Keys. I'd like to reserve two minutes for rebuttal. Ten years ago, Mr. Keys was sentenced to two life sentences for murder to and assault with intent to rob armed, and 12-25 for conspiracy to commit unarmed robbery. We are not contesting sufficiency of the evidence with regard to that third charge. We are arguing that the evidence was insufficient to convict on murder to and assault with intent to rob armed. The theory of conviction was as an aid or an abettor. In order to do that, the state has to prove knowledge of intent on the part of the principal. No question in this case, the issue was whether or not there was knowledge that Mr. Gordon, who actually committed the murder in this case, whether Mr. Keys was aware that he possessed a weapon. A close look at the record, I believe, will show that the proofs on this are not sufficient. I think that if you look at the Hill v. Hoffbaum case at page 45 of our brief and page 38 of the Respondent's Brief, a case where Judge Gilman was on the panel, decided in 2003 by this court, it clearly indicates that there has to be some type of clear knowledge on the part of the aid or abettor of the possession of the weapon by the participant who actually committed the particular crime in question. In that case, Hill was told by the co-participant that another co-participant had gone to get a gun to use in the robbery. There was clear testimony that that was told to the aid or abettor, who was not involved directly in the crime. If you look at Stewart v. Wolfenbarger, cited in neither brief, a 2010 decision of this court at 595 F. 3rd 647, another case where Judge Gilman was on the panel. Again, in this case, Stewart admitted he gave the gun to the principals and knew they were going to commit a robbery. The other case cited by the Attorney General at page 38 of their opinion, Harris v. Stolfall, again had discussion of the use of a gun in the defendant's presence, the aid or abettor's presence. In this case, what we have is some indication that a day before the crime, the three participants were driving from Ferris State in Big Rapids, Michigan to Lansing. There may have been a situation where the actual shooter placed a gun in the console of Mr. Keyes' vehicle while Mr. Keyes was driving. Redmond so testifies. Redmond so testifies. That's what we've got. If you look closely at the record, there is nothing beyond that. Well, there's one thing beyond that because I'm looking at the Michigan Court of Appeals decision. It says defendant emphasized that Redmond testified that he and defendant advised Gordon, quote, a thousand times that it was not necessary to use a gun because Monroe would be unlikely to resist a robbery. He says, however, the jurors could infer from this testimony that the defendant must have known about Gordon's gun. Otherwise, he would not have thought it necessary to tell him repeatedly not to use it during the robbery attempt. So that's an additional fact, isn't it? Yes, it is, Your Honor. But our position on that is that that was conjoined with a lot of other information suggesting that there was a constant refrain by Mr. Keyes and Mr. Redmond, even, that there was not to be any violence exhibited in this particular case. That they were not to use any weapons, that they were to give up if there was any resistance, that it would be an easy robbery. The whole extent of it was that this was to be unarmed. And that was part and parcel. I understand how you can look at that statement the other way. But our position is that there was simply no evidence that Mr. Keyes was aware that there was any gun. Despite this constant refrain of you don't need to use a gun, you don't need to use a weapon, you got to give up if there's any resistance. All right, but the issue is, was there a reasonable, did your client have a reasonable grounds to believe that a gun might be used in this robbery? Because originally the plan was four guys were going to go in that would overpower and intimidate the victim. Here, he knew that in the end Gordon was going in alone. And he knew Gordon had a gun the day before. Is it one day before or two days before? It was one day before, Your Honor. And our position is that he didn't know Gordon had a gun. That there's not sufficient evidence to show that. Well, if I can, I hope I'm not breaking the line of questioning here. But on that point, I mean, let's really focus in on when this gun gets put in the console and whether there is reason to think that your client would be aware of the gun being put there. Redmond says that Gordon, from the back seat, puts the gun in the center console of the Denali. He testifies that, of course, your client's driving. And I understand that there's also testimony that your client is looking at the road ahead of him. But Redmond testifies that, and I have it just in front of me, I mean, the console is about a foot long and about a half a foot wide. And it pops up when you push a button to open it. It doesn't open slowly. It pops up, he says. I mean, I haven't seen that many consoles that do that, but that's what he testifies. And I think there's testimony elsewhere that it opens with the opening towards the driver. So, you know, your client's driving. This thing would pop open, and the opening is right next to him. And the gun's put in there. And I guess the question I have for you is, under those circumstances, even if he's driving and looking forward, I mean, he has peripheral vision. Isn't it fair to say that he would see this happening just, you know, in a place that normally he might have his elbow? I think it's fair to infer that he might have seen the gun during that particular period of time. But there's no direct evidence of that. And to infer beyond that then, on top of that inference, that you can infer the intent with regard to actual knowledge of the weapon, I think is going a little bit too far. Well, I don't wait, but I'm not sure if I understand what you just said. And I appreciate your straight answer. So, I mean, you know, you can infer that he sees that happening next to him. He sees the console. I mean, somebody putting a gun, you know, six inches from you. I mean, I would think you might notice that. But if a jury could infer that he would have observed that, then doesn't this case get pretty tough for you that he knows this guy's? And you've done a really good job in your briefing. I want to tell you that. And the same is true for the State. Really well-argued case. But if he is aware that this guy has a gun, I mean, doesn't that lead into Judge Gilman's point that he knows there's a willful and wanton disregard of the danger he's going to go in there with the gun? Let me say this. I'm aware of the case law from this court as well as U.S. Supreme Court that this issue, sufficiency, is a nearly insurmountable hurdle. There's no question about that. And, in fact, habeas is getting to be a nearly insurmountable hurdle. Judge Reinhart just wrote a law review article that's been published about a month ago in the University of Michigan Law Review on the demise of habeas. And, in fact, I'm happy I'm handling this pro bono because if I take money for these cases anymore, I fear I'm going to be charged with taking money under false pretense. It's a real uphill battle. But let me drop back from inference to – and use a different word. I would use the word speculation, that it's certainly permissible to speculate that Mr. Keyes might have seen that gun when Mr. Gordon put it inside the console. And there was some misstatements of the record on that particular point. But I do think it's speculation. And one of the key things is there was no discussion. There was no evidence that there was – in fact, there was evidence that there was no discussion about a gun. And Redmond clearly testified that he had no knowledge of whether or not Mr. Keyes saw that gun. Right. So I think that we're dropping back into the area of speculation. There is some good language in some of these cases that are cited in the briefs that you can't use speculation as opposed to an inference. But couldn't a reasonable – couldn't a fair-minded jurist conclude that a rational juror could infer that he saw the gun? I mean that's really the test we have on sufficiency here. It's a real fine point, and I can see that I'm losing that fine point. Well, I'm not trying to, you know, telegraph anything. I'm going to stick with the word speculation. Well, here's what the district court said in its opinion. Redmond testified that during the trip back to Big Rapids, Gordon placed a semi-automatic weapon on the console of Keyes' vehicle and that Keyes observed the weapon. And that's wrong. He didn't testify that Keyes observed the weapon. Yeah, but that's what the district court has concluded. Now, we have to say, is that a clearly erroneous finding? I think that's a clearly erroneous statement of the record, and I think that using the word on as opposed to in, which is critical, because if he put the gun on the console, it really, really raises the ante for our argument. But it's in, and Redmond never testified to that point as indicated by the district court, and we lay that out in our brief in detail. But I would like to move on to what I think is a stronger issue, and that is the shackling issue. Yeah, I mean, here you get to turn the tables a little bit. I do because, you know, one of the key things here is under the Chapman test for harmless error, whether or not there was overwhelming evidence of guilt. And our position is as to those two key pieces, the murder two and the assault with intent to rob armed, there was not overwhelming evidence of guilt. Could they have found it? As we've all just discussed, I'm not going to give up that issue, but it's a rough issue for me. There's no question about it, but it plays right into the issue of shackling. And if you look at Deck v. Missouri, the key points in Deck are all met here, all of them. I think that your authored opinion in Mendoza aptly lays it out. There's some key points here that are necessary to get beyond Deck, and I'll run through those. If the shackling in the courtroom was concealed from the jury, which occurred in Mendoza with the skirting, you've got an out. If the shackling was not seen by the jurors in court but during some type of transit outside the actual courtroom, you've got an out. If there's overwhelming evidence of guilt using the Chapman harmless error test, you've got an out. If there was a finding that shackling was necessary and specific to this case because of either an escape risk or a violence risk, you've got an out. But if you can't find any of those things, if you've got shackling in the courtroom, clearly visible to the jurors, and you don't have any specific finding of a need for that, then Deck says you don't have to show prejudice. And that's where the Michigan Court of Appeals erred in this case. What's your view of the – I understand the argument here is that the shackling occurred during voir dire as opposed to the guilt or penalty phase. So does Deck really apply even? I think voir dire is part of trial, and I think that's clearly part of the guilt determination phase. No case has so held that yet, have they? Well, I don't think there's anybody that's ever suggested that voir dire is not part of the trial. But double jeopardy doesn't yet attach during voir dire, right, because the jury hadn't been sworn. I don't believe that the issue of shackling has anything to do with double jeopardy, Your Honor, if I might be so bold as to state that. I think, you know, clearly we're dealing with prejudice in the minds of the jury in terms of proof beyond a reasonable doubt and the presumption of innocence. Right. I mean, here, though, the trial judge says, oh, this was inadvertent. I didn't think this was going to happen. So clearly he wasn't – the shackling was brief in the sense it was just during a part of voir dire. It wasn't the rest of the trial he wasn't shackled. And it's not evidence that the court had determined that he should be shackled. So is there any case that you can cite that says, aha, that's enough for prejudice to be presumed as opposed to your burden of showing prejudice? Well, I think all of the cases say if it's in the courtroom, visible to the jurors, it's a violation. In all those cases, he was shackled through the whole trial. I don't think that there's any out there for taking the shackles off halfway between. And I think really evidence showing here is the jury foreman's affidavit that indicated clearly that he felt that a number of the jurors saw that, were troubled by it, and might have used that to show – Any affidavit from any of these jurors that it affected their vote on whether he was guilty or not. And that gets back to the whole prejudice thing. I don't think we needed the affidavit from the jury foreperson saying that he thought some of the jurors might have used the shackling to find that he was guilty. In fact, nothing in the record shows that any juror said his vote – his or her vote was affected by seeing tees and shackles, is it? Not directly, no. Well, even indirectly. Well, I think the jury foreman's affidavit indirectly – Well, this indicates some jurors saw him shackle. And that he felt that they were troubled by it and might have used the shackling to show it. The foreman didn't say that he himself was affected by it. He did not. Do you mind? He was shackled in the presence of the jury for two hours. Right. Right. And there are cases – I mean, there are cases applying the DEC rule in the penalty phase, I guess, right? Correct. In fact, DEC was a penalty phase case. Okay. All right. Thanks for pointing that out. It's been a while since Mendoza, right? I read it last night for the third time in the last two days. Are there any other Supreme Court cases applying DEC outside of the liability, the guilt phase, proper? Not that I'm aware of, Your Honor. I did find yesterday three cases decided by the Eastern District in the last couple of months on shackling by Judges Lightman, Lawson, and Edmonds. I'll see those soon enough probably, right? But they all bear these hallmarks that I was just talking about. In one case, there was no showing that the jury saw the shackles. Same in the second case. And in the third, it had a trifecta. There was no visible shackling. There was a justified escape risk noted by the judge, and there was substantial evidence against the defendants. Let me ask you this quick question since the red light's on. White v. Woodall came down last term, Supreme Court reversed our court, granting the writ, and among other things said that this idea that an unreasonable failure to extend a holding to new facts is not a ground to grant habeas relief. Why isn't your argument that DAC applies to voir dire as reasonable as that might be in terms of, of course it should, right? Why isn't that blocked by White v. Woodall? Because I think that if you look at all of the cases on shackling, they all indicate that the problem of the violation is the defendant being seen by the jurors in the courtroom during the trial. I think voir dire is clearly a part of the trial. So maybe it's the level of generality that the court itself describes the problem at in those cases, perhaps. Yeah, it's very possible. You know, it's like, well, they have different last names, too. Does that mean it does not apply? Okay. Thank you, sir. Thank you, Mr. Tabor. May it please the court, Bruce Edwards, assistant attorney general for the warden. As briefly has been discussed, this is a habeas case, and therefore the very limiting standards of it apply here. And it's the state's position that the Michigan Court of Appeals resolution, his, Keyes' issues were not beyond fair-minded disagreement. As was discussed, Mr. Gordon was the shooter, and as the prosecutor said in his closing argument, Gordon pulled the trigger, but Mr. Keyes pulled the strings. And the record clearly shows that Mr. Keyes orchestrated this entire robbery of his friend, and he and Redmond put the plan together. They tried first night, and two men went to the door. And on that first night, that was after Keyes had had the gun put in the console right next to his right elbow. And after Keyes and Redmond told Gordon, you won't need a gun, you won't need a gun, and Redmond testified that Gordon insisted on taking the gun. He took the gun to the door the first night, and nobody ever answered the door. And they came back with their tail between their legs. Nobody answered the door. So they said, well, we'll do it again tomorrow night. Meanwhile, Evans has a brain, and he said, I'm dropping it. I don't know anything to do with this anymore. So the next night, they go to do their crime again. This time, instead of two people going to the door, one person goes to the door. And he's told, okay, you have this skinny young boy that has the drugs and the money, but there's a pit bull in there, and there's a football player in there, and his girlfriend's in there, and there might be a 12-gauge shotgun in there also.  I mean, I just think that the jury could easily conclude, easily reasonably infer, that if Gordon insisted on taking the gun the first night when he had somebody standing beside him for intimidation purposes, he's going to take the gun the second night when he doesn't have somebody standing beside him, and these other people, a gun and a dog, are going to be in the apartment. So even though being armed is not an element of second-degree murder, knowing that your co-defendant is armed is proof of malice under Michigan law. So it is technically an element here, even though it's not, if that makes any sense. But anyway, under the double deference that applies, you have to give the evidence that's favorable to the verdict, and give the Michigan Court of Appeals the benefit of the doubt in refuting their decision. And I think that the evidence was sufficient. You can easily affirm the district court's finding on that. Okay, now we come to the shackling question. I have the deck opinion right here. This is the key language. Where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, then there's no need to show prejudice. Well, this was a death penalty case on direct appeal. We are not on direct appeal. We are on habeas land. And you always have to show a substantial and injurious effect on a direct behavior. So this test about the defendant doesn't need to demonstrate actual prejudice, that would apply if this case is on direct appeal. I don't understand this. You're losing me. I mean, e.g., if the Supreme Court says error is structural, we treat it as structural on habeas. They can say it's structural because it's even subject to harmless error under death. Okay, but I'm not saying this is structural. I'm just saying that we apply the standard the court says. On direct appeal. But the Sixth Circuit has said direct is always the test in habeas when there's been an error. You have to show a substantial and injurious effect on the verdict. We have the Supreme Court saying presume prejudice. Why the heck would we not presume prejudice? Because this is not a direct appeal case. Okay, I guess I'm just not following that. Do you have any example of... There are two nine-story cases that I follow where they specifically said if it's a habeas case, the petitioner always has to show a substantial and injurious effect. Was that overriding DEC specifically? It was subsequent to DEC. Was it concerning the DEC standard? Or just general... Was it saying we're not applying the DEC presumption in habeas? I don't know that they use those words, but that's clearly the implication. So it was a DEC claim? Yes, it was. Okay. All right, but I don't really need that, but I did want to make that point. But here's why DEC doesn't apply. It says, weary court without adequate justification orders the defendant to wear shackles. This judge did not order the defendant to wear shackles. It was inadvertent. The judge said, on the record, we took pains that this not happen, and yet it happened. And so this was an eight-day trial, and he was in his shackles for an hour and a half, two hours maximum, under an eight-day trial. And every single time the defendant came into the courtroom after this initial time, he came in free. His hands were free, and he wasn't on a shackle. So DEC really just doesn't apply if the judge didn't order the shackles. Well, would you agree that in the presence of the jury part is satisfied here? For an hour and a half to two hours out of an eight-day trial, yes, it was. But that would clearly require an extension of DEC beyond, you know, because in DEC it was for the entire sentencing phase for the death penalty case. He was visibly shackled for the entire hearing, however many days that was. Here, less than two hours under an eight-day trial. So clearly that would be extending the DEC beyond what he would have alleged you mentioned, Your Honor. And we also have the fact that, you know, DEC errors can be harmless. If, in fact, you want to apply DEC or you believe DEC should be applied, then the state would contend, along with the district court and the state court of appeals, that the error here was harmless when a jury could reasonably conclude the defendant knew Gordon was armed when he went to the door by himself at 2.30 in the morning to knock on a door and expect to be let in without any weapons by his side and say, give me your drugs and give me your money. The district court was mistaken when it said that Gordon put the gun, quote, on the console, correct? That is correct, Your Honor. If you read the district court's opinion, twice it uses the word on and twice it uses the word in. I don't know if it was a typo or just a misreading of the record. I mean, if the court, in fact, thought it was analyzing an on case, then that really does, you know, affect the validity of that analysis. Well, he had used the word on four times, but he didn't use in twice and on twice. And if you think about it, if you're driving a car and somebody raises the console, sticks something in, and then the console is closed again, that's quite a bit of movement, right, to your right elbow, whereas if they just put something to your right elbow, that's not more, I wouldn't think, than raising, putting in, and then lowering. So I don't view that as really very significant, that misreading by the district judge. So you reject the idea that you have to show, or you reject the idea that the standard for harmlessness with respect to the debt claim is whether you have shown that the shackling was harmless beyond a reasonable doubt. You don't accept that. In direct appeal cases, the burden is on the prosecutor to show basically harmless beyond a reasonable doubt. But in habeas cases, the burden is always on the defendant to show substantial and unreasonable doubt. That just doesn't make sense to me. Let me explain why. Okay, so first of all, I think the last reason decision on this issue is the trial court's decision in post-conviction proceedings in state court. Right. And that court, actually, that court does apply DECC, and it applies it. It applies the correct standard, and it applies DECC, and then it asks the question I just asked, and, you know, is it harmless beyond a reasonable doubt? That court says, yes, it's harmless beyond a reasonable doubt. So now we're asking, could any fair-minded jurist give that answer to that question? Right? Not to a different question. Not to—we don't ourselves now say, well, have—what is your version of the assessment we have to make of the evidence? Okay, but that's—see, but here's the weird thing. That is not what the last reason decision answered. Right? That's correct. It answered the direct review question. It answered a more difficult question. Right, right. But I'm not going to concede that the burden is on the state when the burden is actually on a habeas petition. Well, see, I have never encountered a habeas case where in determining whether the court unreasonably applied Supreme Court precedent, we don't analyze the same question that the court answered, but instead analyze some other question. Well, I believe Crawford cases are the same. Under Crawford, when they're on direct appeal, the burden is on the prosecutor to show, you know, harmless beyond a reasonable doubt. But habeas Crawford cases, they always analyze them direct. That's the best of my recollection. Okay, I'll check that. I mean, you know, I could be mistaken, but, boy, I mean, that just seems awfully strange that we would ask a different question than the one the court properly answered. Well, if you ask a question that places a lesser burden on the state, and the lesser burden is always on the state in habeas cases. And that's sort of— I thought the benefit you get in habeas cases is we review deferentially the answer to the same question that we would ourselves look at on habeas, not review deferentially, you know, a more easy test for the state to meet. Okay, well, anyway, I'm sorry to belabor that. That's interesting. Let's—I mean, what if you do have to meet the DEC standard? I mean, I know clearly that's not your argument, and I'm going to look that up. Beyond a reasonable doubt. Even if we have to show that my argument would still be that DEC doesn't apply, not the DEC test, but that DEC doesn't apply because the judge didn't order him shackled for the trial. The judge never said that. Let's say we say we just disagree with you about these ways to distinguish DEC, and we get to the harmless error thing, and I'm not saying this is the way it's going to go, but hypothetically we disagree with the standard, and in fact you do need to show harmless beyond a reasonable doubt. What's your argument there? My position would be that the trial court in denying relief from judgment was not objectively unreasonable when he concluded that the state showed that there was overwhelming evidence, and therefore the error can be harmless. And even under DEC, the U.S. Supreme Court said shackling errors can be harmless. Sure. So that would be the position. I know, but why? Because the evidence showed that he knew that a jury could reasonably conclude that he knew Gordon had a gun on the 11th. But don't you have to show that beyond a reasonable doubt the jury would have concluded? If they hadn't seen the gun. Not just he could. See, the question would be not whether a jury reasonably could conclude that he sees the gun going into the console. The question would be whether basically every rational jury would so find. Right. When you combine the placing of the handgun into the console or his right elbow with the defendant and Redmond both telling Mr. Gordon repeatedly, you're not going to need a gun, you're not going to need a gun, the implication clearly is they know he has a gun. I mean, the prosecutor in his closing argument said, which of you have warned your child don't touch the cold stove? He says, you don't tell your kid don't touch the stove unless it's hot, do you? Same way here. There's no need to say you're not going to need a gun unless you know he plans on using a gun. And any reasonable criminal under the facts of this case would want a gun. You know. So and that. The prudent criminal. Yeah. And we also have the fact that Keys and Redmond had just met Gordon 48 hours earlier. They don't know anything about this guy, whether or not he's going to listen to what they have to say. And the idea that if he shows any resistance, just run away, when the guy thinks I'm going in for at least $2,000 in cash and a bunch of cocaine, it seems rather unreasonable to expect the guy to go, oh, didn't work, he said no. I mean, that's just not how the normal world really operates, quite frankly. Let me get to these affidavits. All right. An investigator filed an affidavit where she purports to report some things that people said to her. That is all hearsay. None of those jurors filed an affidavit of their own. So anything the investigator said is irrelevant. So then we're left with the affidavit from the jury form. And he does sign an affidavit. But as Judge Gilman pointed out, he never says that seeing the shackling had any effect on him. He just speculates that it may have had an effect on some of the other jurors. And there's no basis for making that statement, which is a rather startling statement, quite frankly. Didn't he try over and over to get an evidentiary hearing in state court? He may have. So, I mean, we can't really fault him for not fleshing this out, right? Presumably the state opposed the evidentiary hearing. Sure. But I think, I mean, my understanding is Mr. Teever argues in his brief, and I want you to tell me if you think this is correct, that if a habeas petitioner had requested an evidentiary hearing throughout the state proceedings and not gotten one, that Pinholster doesn't apply. I strongly disagree with that. It's case after case. It just says the Constitution never requires a post-conviction evidentiary hearing. It's just never required. Yeah, but the question is, fine, they don't have to have it, but does Pinholster apply if they don't? Pinholster says so long as a claim was adjudicated on the merits, then you never get an evidentiary hearing. You can have a claim adjudicated on the merits even after denying an evidentiary hearing. Of course. So the state would have asked this court to affirm the district court because the petitioner has not shown that the Michigan Court of Appeals or the state trial court's decisions were beyond a fair-minded disagreement. There was no extreme malfunction here. Thank you very much. Thank you, Mr. Edwards. Mr. Teber? Just a few quick points. We did attempt to get an evidentiary hearing at all levels of the state system and in federal district court and were denied at each point. And I think that what the law in the wake of Pinholster suggests is that what you get to do is accept our proofs that we requested the evidentiary hearing with to determine whether or not accepting those we need to test under 2254. I mean, did you do a proffer in the state courts? Is that what you're saying? Is that in the record? We submitted the affidavits at each level of the state court system and requested a hearing under the formal rules requirement. So the affidavits were the proffer? Yes. Those are in the record, right? I mean, that's part of the record, so you've got that. Right. So I think you can accept those affidavits. In terms of fleshing it out, yeah, we were prevented from doing that. With respect to the issue of inadvertence, if you look at all the cases on shackling, there's nothing in any of those cases that deal with inadvertence as any type of hallmark. And in this case, despite the fact that the trial court didn't order the shackling, the court had the perfect opportunity to take steps to avoid the problem by granting the mistrial that the defense requested after the jury saw Mr. Keyes in shackles for two hours in the courtroom. So I think that clearly there is no wiggle room for a respondent there. Waiver is possible. If there had been no objection, we would be in trouble. But in this case, the trial judge controlled the situation because he easily could have granted a mistrial and started over. They would have lost two hours. So I don't think that's an issue whatsoever. With regard to the—and my final point will be the Michigan Court of Appeals opinion. If you look at that, they went off the rails when two years after DECK had been decided, despite the fact that the DECK tests, they demanded a showing of prejudice, which DECK clearly does not require. And I think that that clearly is an unreasonable application or a contrary to. Don't we just throw that out the window, though, and look only at the state trial court decision and the post-conviction proceedings? I think you could take into account the decision of the Michigan Appellate Court with regard to the direct appeal aspects. You're right that the state trial court on post-conviction was the last reason, but it goes off on different areas. It doesn't necessarily require prejudice. It does speak to what, in my view, is the correct harmless error test. It just makes a wrong decision on that. Okay. Thank you, sir. Thank you, Your Honor. Okay. Thank you, counsel, for your arguments today. We do appreciate them. The case will be submitted.